**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company,<br><br>        Plaintiff,<br><br>v.<br><br>Phillip J. Merrill, Trustee for the heirs and next-of-kin of P.B., a minor, deceased,<br><br>        Defendant,<br><br>and<br><br>Phillip J. Merrill, Trustee for the heirs and next-of-kin of P.B., a minor, deceased,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>State Farm Mutual Automobile Insurance Company,<br><br>        Counterclaim Defendant. | Case No. 18-cv-00430 (SRN/KMM)<br><br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Robert E. Kuderer and Thomas C. Brock, Erickson, Zierke, Kuderer & Madsen, P.A., 7301 Ohms Lane, Suite 207, Minneapolis, MN 55439, and Gregory E. Kuderer, Erickson, Zierke, Kuderer & Madsen, P.A., 114 West Second Street, Fairmont, MN 56031 for Plaintiff and Counterclaim Defendant.

James A. Heuer, Jr., Heuer Fischer, P.A., 10 South Fifth Street, Suite 950, Minneapolis, MN 55402 for Defendant and Counterclaim Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

This insurance dispute arises out of a tragic car accident that occurred on Interstate 494 in December of 2016. Three family members died as a result of the accident. One of those family members was a minor, who the Court will call P.B. The Trustee for P.B.'s Estate, Defendant Phillip Merrill ("Merrill"), contends that Plaintiff State Farm Insurance Company ("State Farm") owes the Estate $100,000 in Underinsured Motorist Insurance ("UIM"). State Farm disagrees. Accordingly, State Farm filed a declaratory judgment action seeking a declaration from this Court that Merrill's UIM claim is barred by Minnesota's No-Fault Act. Merrill answered and filed counterclaims of breach of contract and unjust enrichment. State Farm now moves for judgment on the pleadings. It also moves to dismiss Merrill's breach of contract and unjust enrichment counterclaims under Fed. R. Civ. P. 12(b)(6).

After carefully reviewing the record and applicable case law, the Court grants State Farm's motions in full.

## I.    BACKGROUND

In describing the background of this case, the Court assumes as true the factual allegations in the complaint (and counterclaim) and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, 871 F. Supp. 2d 843, 851 (D. Minn. 2012) (noting that the same standard applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c)). Further, while the Court may consider "materials that are necessarily embraced by the pleadings" in describing the facts of a case in this procedural posture, such as exhibits to a complaint, it "generally must ignore materials outside the pleadings." *Id*. Here, for instance, though the Court does consider the

exhibits attached to the complaint and counterclaim, it does *not* consider the affidavit submitted by Merrill's counsel alongside his brief in opposition. *See Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (noting that "matters outside the pleadings" include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings").[1]

### A. The Parties and Their Insurance Coverage

Although this insurance dispute technically revolves around only two parties – the deceased minor P.B. (through his trustee Merrill) and State Farm – the Court also discusses P.B.'s mother (Dylan Bailey), P.B.'s grandmother (Dawn Chiodo), and the driver of the other vehicle involved in the accident (Patrick Hayes). These three persons, and their respective automobile insurance policies, are central to this litigation.

Dylan Bailey was the mother and sole legal guardian of P.B. (Answer & Countercl. [Doc. No. 29] ¶ 30-31.) Ms. Bailey was the "only named insured" under a State Farm auto policy covering her 2010 Toyota Prius, which was not involved in the accident. (*Id*. ¶ 48.) Although P.B. was insured as a "resident relative" under this policy, P.B. was not named anywhere on the policy. (*Id*. ¶¶ 48-50.) This policy carried UIM limits of $100,000 per person and $300,000 per accident. (Compl. [Doc. No. 1], Ex. 1 [Doc. No. 1-1] ("Bailey Policy") at 56.)

Dawn Chiodo was Dylan Bailey's mother and P.B.'s grandmother. (*See* Answer & Countercl. ¶ 32.) Ms. Chiodo and Ms. Bailey co-leased a residence in Bloomington,

---

[1]     And, as explained in footnote five below, even if the Court did consider Merrill's affidavit, it would not change the outcome of this case.

Minnesota, where P.B. also resided. (*Id.* ¶¶ 8, 33-34; Compl. ¶ 20; *see also* Answer & Countercl. Ex. A (Bailey & Chiodo Lease) at 1).)[2] Ms. Chiodo owned and operated a 1998 Jeep Cherokee at the time of the accident. (Compl. ¶ 19.) Further, Ms. Chiodo was a named insured on a policy issued by Geico Insurance Company covering the Jeep ("Chiodo Policy"). The Chiodo Policy provided less generous coverage than her daughter's policy, with UIM limits of only $50,000 per person and $100,000 per accident. (*Id.*)

Patrick Hayes was the owner and operator of the other vehicle involved in the collision. At the time of the accident, Mr. Hayes was insured under an automobile liability policy through State Farm with bodily injury limits of $100,000 per person and $300,000 per accident ("Hayes Policy"). (Compl. ¶ 18.)

### B. Factual History

The salient facts of this case are generally undisputed. On December 2, 2016, Patrick Hayes drove his Chevrolet Malibu eastbound in the westbound lanes of Interstate 494 near Bloomington, Minnesota – "the wrong way and against traffic." (Compl. ¶¶ 15-16.) Dawn Chiodo, carrying a car full of friends and family, approached and then merged her Jeep Cherokee onto westbound I-494. As she did so, Mr. Hayes struck her vehicle "head-on." (*Id.* ¶ 16.) Tragically, Ms. Chiodo, Ms. Bailey, and P.B. died as a result of the collision. Jennifer and Olivia Nord, the two other passengers in Ms. Chiodo's Jeep, suffered serious injuries (collectively, "Claimants"). (*Id.* ¶ 17.)

---

[2] To the extent there was any confusion on this issue, at the July 23 motion hearing Merrill's counsel clarified that, prior to the crash, "P.B. lived in the home with [his] mother [Ms. Bailey] and P.B.'s grandmother [Ms. Chiodo]." (July 23, 2018 Hr'g Tr. at 14.)

Following the accident, State Farm notified Claimants that it would tender the Hayes Policy liability limit of $300,000 in exchange for the release of Mr. Hayes from all wrongful death and personal injury claims. (*Id.* ¶ 28.) By a *Schmidt* notice dated August 8, 2017, attorneys representing the trustees for the estates of Ms. Bailey and P.B. notified State Farm of an internal agreement amongst the Claimants regarding the allocation of the $300,000 Hayes Policy limit, as well as the $100,000 Chiodo Policy UIM limit. (Compl., Ex. 2 [Doc. No. 1-2] at 2, 4.)[3] Additionally, Merrill gave notice of his intent to seek $100,000 in excess UIM coverage from State Farm under the Bailey Policy. (Compl., Ex. 2 at 2.)

Under the agreed-upon internal settlement, which the parties attached to the *Schmidt* notice, available funds would be distributed among the Claimants as follows:

| Claimants (*decedents italicized*) | State Farm Hayes Policy | Geico Chiodo Policy (Primary UIM) | Excess UIM Coverage | Claimants' Expected Coverage |
|---|---|---|---|---|
| *Dawn Chiodo* | $87,500.00 | $50,000.00 | $0.00 | $137,500.00 |
| *P.B.* | $37,500.00 | $0.00 | **$100,000.00** (Bailey State Farm Policy) | $137,500.00 |
| *Dylan Bailey* | $37,500.00 | $0.00 | $100,000.00 (Bailey State Farm Policy) | $137,500.00 |
| Jennifer Nord | $37,500.00 | $0.00 | $100,000.00 (personal policy) | $137,500.00 |
| Olivia Nord | $100,000.00 | $50,000.00 | $50,000.00 (personal policy) | $200,000.00 |

---

[3]    As explained later in this decision, a *Schmidt* notice provides notice of a tentative settlement to an underinsurer, which then enables the underinsurer to protect its subrogation rights against a tortfeasor. *See Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983).

(Answer & Countercl., Ex. C [Doc. No. 29-1] ("Claim Settlement") at 31.)[4] Under this agreement, Olivia Nord and the estate of Dawn Chiodo would each recover $50,000 from Chiodo's Policy. The estates of P.B. and Dylan Bailey would each receive $100,000 in excess UIM coverage as insureds under the Bailey Policy. Finally, Jennifer and Olivia Nord would each recover excess UIM under personal policies.

By letter dated August 21, 2017, "State Farm, on behalf of Mr. Hayes, agreed to [the] Claimants' [] agreed-upon allocation of the [Hayes] Policy in exchange for a release of Mr. Hayes." (Compl. ¶ 30; Answer & Countercl. ¶ 16 (admitting this allegation).) On August 25, 2017, Merrill's counsel advised State Farm that he would only accept the $37,500 allocation under the Hayes Policy if State Farm tendered $100,000 under the Bailey Policy for Merrill's UIM claim. (Compl. ¶ 31.) State Farm declined this demand, contending that Merrill was not entitled to such UIM coverage. (*Id.* ¶ 32.)[5]

---

[4]     A table similar to the one displayed here was included in a letter sent to State Farm by attorneys for the Estate of Dylan Bailey on December 13, 2017. (Compl., Ex. 3 [Doc. No. 1-3] at 7.) The bold lettering indicates the disputed UIM coverage at issue in this motion.

[5]     The exact time and manner of State Farm's denial of UIM coverage to Merrill under the Bailey Policy is a point of contention between the parties. (*Compare* Compl. ¶ 32 (not stating when this denial occurred) *with* Answer & Countercl. ¶¶ 67-69 (stating that this denial first occurred on November 14, 2017, following numerous "unreturned voice mails").) The affidavit submitted by Merrill's counsel in opposition to State Farm's motion for judgment on the pleadings, which the Court may not consider in ruling on this motion, provides further detail on this point. (*See* Affidavit of Jonathan J. Fischer ("Fischer Affidavit") [Doc. No. 53-1].)

However, this factual dispute does not bear on the threshold legal question of whether Merrill is even entitled to UIM benefits under the Bailey policy. To the extent this factual dispute bears on the equities of State Farm's conduct, the Court notes that Merrill never alleges that, in agreeing to the Claimants' proposed allocation of the *Hayes Policy* in return for a liability release, State Farm ever affirmatively promised or suggested that it would pay P.B.'s UIM claim from the *Bailey Policy* as part of that release. To the contrary,

As evident from this account, State Farm's denial of UIM coverage to Merrill under the Bailey Policy was not anticipated by the Claimants' internal settlement agreement. By letter dated December 13, 2017, counsel for Ms. Bailey's Estate joined Merrill's demand that State Farm provide UIM coverage to Merrill under the Bailey Policy, stating that "State Farm's position is holding up the proposed global settlement." (Compl., Ex. 3 at 3.) In response, State Farm maintained that its denial of UIM coverage was legally proper. (Compl. ¶ 34.)

Nonetheless, following these events, State Farm and Geico distributed the Hayes Policy and Chiodo Policy funds pursuant to the Claim Settlement. (*See* Answer & Countercl. ¶¶ 56-58.) Further, State Farm distributed excess UIM benefits to Ms. Bailey's Estate under the Bailey Policy. (*See* Hr'g Tr. at 23.) However, because State Farm did not believe Merrill was entitled to excess UIM coverage under the Bailey Policy, Merrill was left with only the $37,500 allocation from the Hayes Policy.[6]

### C. Procedural History

---

Merrill's affidavit shows that State Farm, while perhaps dilatory in its responses, repeatedly declined to make any promises about excess UIM benefits. (*See* Fischer Affidavit ¶¶ 4-15.)

[6]    State Farm also paid Merrill $20,000 in "no-fault" benefits under the Bailey Policy, for hospital treatment P.B. received after the crash. (*See* Answer & Countercl. ¶ 52, Ex. B.) Although Merrill implies that this payment has some bearing on the excess UIM question before the Court, it does not. UIM coverage and no-fault coverage are separate and distinct coverages with different statutory schemes. *Compare* Minn. Stat. § 65B.47 (no-fault) *with* Minn. Stat. § 65B.49 (UIM).

State Farm filed the instant declaratory action on February 14, 2018 to determine its rights, obligations, and liability under the Bailey Policy. (Compl. ¶¶ 34-35.) In its complaint, State Farm asserted diversity jurisdiction, and maintained that, according to the plain language of the Minnesota No-Fault Insurance Act, Minn. Stat. § 65B.49, subd. 3a(5), Merrill was not entitled to excess UIM coverage under the Bailey Policy. (*Id*. ¶¶ 9-10, 27.)[7]

On April 17, 2018, Merrill answered and filed counterclaims of breach of contract and unjust enrichment. (Answer & Countercl. ¶¶ 24-26.) On May 21, State Farm moved for judgment on the pleadings on the UIM coverage issue. (Pl.'s Mem. in Supp. of its Mot. to Dismiss Countercl. & for J. on the Pleadings ("State Farm's Br.") [Doc. No. 45].) In the same motion, State Farm moved to dismiss Merrill's breach of contract and unjust enrichment counterclaims under Fed. R. Civ. P. 12(b)(6). (*Id*.) On June 25, Merrill filed an opposition to State Farm's motion to dismiss, as well as its own request for judgment on the pleadings with respect to the UIM coverage issue. (*See* Def.'s Mem. in Opp'n & for J. on the Pleadings ("Merrill's Br.") [Doc. No. 53].) State Farm followed up with a reply brief on July 10 (*see* State Farm's Reply Br. [Doc. No. 54]), and the Court entertained oral argument on July 23.

## II.   DISCUSSION

---

[7]     Although State Farm initially named all five Claimants as defendants, as well as Mr. Hayes, by May 30, 2018 State Farm had voluntarily dismissed every defendant except Merrill. (*See* Apr. 9, 2018 Order [Doc. No. 27] (Jennifer and Olivia Nord); Apr. 20, 2018 Order [Doc. No. 32] (Trustee for Dylan Bailey's Estate); May 8, 2018 Order [Doc. No. 38] (Trustee for Dawn Chiodo's Estate); May 30, 2018 Order [Doc. No. 52] (Patrick Hayes).)

"Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).

With respect to a motion to dismiss, a court may only dismiss a claim when the complaint (or counterclaim) does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gorog*, 760 F.3d at 792 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the pleader draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). As noted above, courts in this Circuit view factual allegations in motions to dismiss and motions for judgment on the pleadings under the same, liberal standard. *See Great Lakes Gas Transmission Ltd. P'ship*, 871 F. Supp. 2d at 851.

The Court first addresses whether Merrill is entitled to excess UIM benefits under the Bailey Policy. The Court then considers State Farm's motion to dismiss Merrill's breach of contract and unjust enrichment counterclaims.

## A.   Whether Merrill is Entitled to Excess UIM Benefits

### 1.   Legal Standard

This motion turns on Minnesota's No-Fault Act, and on Minnesota case law interpreting that statute. *See State Farm Fire & Cas. Co. v. Ewing*, 269 F.3d 888, 890 (8th Cir. 2001) (applying Minnesota law to an insurance coverage dispute based on diversity jurisdiction). When interpreting a Minnesota statute, courts must first assess "whether the

statute's language, on its face, is clear or ambiguous." *Sleiter v. American Family Mut. Ins. Co.*, 868 N.W.2d 21, 24 (Minn. 2015) (quoting *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 434 (Minn. 2009)). "When the words of a law are 'clear and free from all ambiguity,' the plain meaning controls and will not be 'disregarded under the pretext of pursuing the spirit' of the law." *Id*. (quoting Minn. Stat. § 645.16). It is only "when the language of a statute is unclear or ambiguous" that courts may "go beyond the specific language of the statute to determine the intent of the legislature." *Id*. (quoting *Emerson v. Sch. Bd. Of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 684 (Minn. 2012)). Further, subsequent "judicial construction[s] of a statute become part of the statute as though written therein." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 529 (Minn. 2015).

### 2. The Minnesota No-Fault Act

Minnesota's No-Fault Act mandates that automobile policies provide minimum UIM coverage limits. *See* Minn. Stat. § 65B.49, subd. 3a(1). UIM covers those "who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles." *Id.* § 65B.43, subd. 19. An "underinsured motor vehicle" is a motor vehicle that is covered by a bodily injury liability policy with a "limit . . . less than the amount needed to compensate the insured for actual damages." *Id.* § 65B.43, subd. 17.

The Minnesota No-Fault Act also "provides a framework for determining the source of coverage for UIM claims." *West Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 697 (Minn. 2009); *see also Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 745 (Minn. 2001) ("[T]he No Fault Act . . . sets forth the order in which an injured party should seek UIM coverage from relevant policies."). The Act's relevant provision provides that:

> [i]f at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.
>
> However, if the injured person is occupying a motor vehicle *of which the injured person is not an insured*, the injured person *may be entitled to excess insurance protection* afforded by a policy in which the injured party is otherwise insured.

Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added).[8] Minnesota courts have interpreted this provision as creating a "two-tiered statutory priority scheme" that determines the availability of "primary" and "excess" UIM coverage. *West Bend*, 776 N.W.2d at 699-700.

For "primary" UIM coverage, the statute "require[s] the injured occupant to look first and exclusively to the policy limits on the occupied vehicle." *Id.* at 699 (citing *Vue v. State Farm Ins. Co.*, 582 N.W.2d 264, 267 (Minn. 1998)). This approach reflects the Minnesota Legislature's "broad policy decision" in 1985 "to tie uninsured motorist and other coverage to the particular vehicle involved in the accident." *Id.* (citing *Hanson v. Am. Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn. 1987)).

However, "if the injured person is *not an insured* of the occupied motor vehicle, the injured person may then be entitled to seek excess insurance protection through another automobile insurance policy in which the injured person is insured." *Becker v. State Farm. Mut. Auto Ins. Co.*, 611 N.W.2d 7, 11 (Minn. 2000) (emphasis added). To determine whether

---

[8]     In addition, assuming excess coverage is available, that coverage is limited "to the extent of covered damages sustained." Minn. Stat. § 65B.49, subd. 3a(5). Further, excess coverage "is available only to the extent" that the injured person's personal UIM policy limit "exceeds the limit of liability of the coverage available to the person from the occupied motor vehicle." *Id.*; *see also Sleiter*, 868 N.W.2d at 27-28. However, because the pertinent question is whether Merrill is even entitled to excess UIM coverage in the first place, neither of these provisions is at issue here.

an injured person is "an insured of the occupied motor vehicle" for purposes of "excess" UIM coverage, the Minnesota Supreme Court instructs courts to look to the No-Fault Act's definition of "insured." *Id.* at 12. In other words, the excerpted provision "establishes the priority scheme for the source of any UM/UIM coverage for persons injured in accidents while occupants of motor vehicles, *except* for those persons excluded by the definition of insured provided in [the statute]." *Id.* (emphasis added); *accord Allianz Ins. Co. of Canada v. Sanftleben*, 454 F.3d 853, 857 (8th Cir. 2006).

Under the No-Fault Act, "insured" means "the named insured" *and* a "(1) spouse, (2) other relative of a named insured, or (3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured," who is "(a) residing in the same household with the named insured and (b) not identified by name in any other" auto insurance policy. Minn. Stat. § 65B.43, subd. 5.

It is not disputed that, "at the time of the accident," P.B. was "occupying" Ms. Chiodo's Jeep Cherokee, for which Ms. Chiodo carried an automobile insurance policy with UIM limits of $50,000 per person and $100,000 per accident. Further, it is not disputed that, because P.B. resided with Ms. Chiodo (his grandmother) and Ms. Bailey (his custodial parent), and because P.B. was not "identified *by name* in any other" auto insurance policy, P.B. was statutorily "insured" under the Chiodo Policy.[9]

### 3. Analysis

___

[9] By contrast, as a *named* insured of the Bailey Policy, P.B.'s mother, Ms. Bailey, was *not* statutorily "insured" under the Chiodo Policy. State Farm accordingly provided her "excess" UIM coverage from her own policy, beyond that available from the Chiodo Policy. (*See* Hr'g Tr. at 23 (clarifying this distinction).)

Here, State Farm argues that Merrill's claim begins and ends with the plain language of the No-Fault Act. State Farm maintains that, where an injured occupant falls within the Act's definition of "insured," their UIM coverage is "statutorily tied to the amount of coverage specified for the occupied motor vehicle." (State Farm's Br. at 10.) Thus, because P.B. is an "insured" of the Chiodo Policy under the Act, and because that was the vehicle involved in the accident, State Farm contends that Merrill may not look beyond the Chiodo Policy for excess UIM benefits. (*Id*.)

In the face of State Farm's straightforward statutory argument, Merrill argues that (1) P.B. is entitled to excess UIM coverage under the Bailey Policy because he was in the "legal custody" of Ms. Bailey, and (2) the policy goals articulated in the Minnesota Supreme Court decision *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41 (2008) would be undermined were P.B. denied excess UIM coverage simply because (a) he was residing with his grandmother, Ms. Chiodo, at the time of the crash and (b) he was not specifically named in his mother, Ms. Bailey's, policy.

Although the Court is sympathetic to Merrill's predicament, neither of his arguments trump the No-Fault Act's clear language, which this Court is dutybound to follow. *See Sleiter*, 868 N.W.2d at 24 ("When the words of a law are 'clear and free from all ambiguity,' the plain meaning controls and will not be 'disregarded under the pretext of pursuing the spirit' of the law.") (quoting Minn. Stat. § 645.16).

Merrill's first argument appears to be based on a misunderstanding. That is, that P.B.'s "insured" status under the Bailey Policy has any bearing on whether P.B. is entitled to UIM benefits beyond those offered in the Chiodo Policy. It does not. State Farm does not dispute

that P.B. is insured under the Bailey Policy as Ms. Bailey's "minor in custody." (*See* State Farm's Reply Br. at 4-5.) Rather, State Farm notes, because "[i]t is undisputed P.B. was [also] an insured under Chiodo's policy," as a resident relative not identified by name on any other insurance policy, P.B.'s UIM coverage is limited to that policy, regardless of his "insured" status under the Bailey Policy. (*Id*. at 5.)

The one case Merrill relies on in support of this first argument, *Jirik ex rel. Jirik v. Auto-Owners Ins. Co.*, 595 N.W.2d 219 (Minn. Ct. App. 1999), further proves the point. (*See* Merrill's Br. at 4-5 (citing *Jirik* for the proposition that P.B.'s access to his mother's UIM benefits turns on custodial status).) In that case, a 13-year-old minor "in her mother's custody" was severely injured when her mother crashed into a landscaping truck. *Jirik*, 595 N.W.2d at 220-21. After collecting the maximum available "primary" UIM benefits under her mother's policy, the minor sought to collect "excess" UIM coverage from her father's uninvolved automobile policy, claiming entitlement as a resident relative even though "her mother and father were divorced and [the minor] was living with her mother." *Id.* The Appeals Court rejected this argument, noting that, "[a]lthough [the minor] was not a named insured in her mother's policy, it is undisputed that she was covered by that policy because she was a minor in the custody of the named insured." *Id*. at 222 (citing the statutory definition of "insured"). Therefore, the Appeals Court held, "the express language" of the No-Fault Act "limited [the minor] to the UIM benefits for the vehicle in which she was injured." *Id*. at 222; *see also Schons*, 621 N.W.2d at 747 ("Because the injured passenger in *Jirik* was 'an insured' under the host driver's policy, the second sentence of subdivision 3a(5) rendered her ineligible for UIM coverage beyond that available from the host driver.").

As such, although the Appeals Court discussed custodial status, it did so only to establish that the minor satisfied the statutory definition of "insured" for her mother's vehicle, *i.e.*, the source of primary coverage. If anything, *Jirik* reinforces State Farm's argument that an injured person (including a minor) may not seek excess UIM coverage when they meet the statutory definition of "insured" for the occupied vehicle, even if that result curtails the injured person's access to needed coverage. To do otherwise, the *Jirik* panel noted, would "invite" courts "to ignore or to torture the language of" the No-Fault Act. *Jirik*, 595 N.W.2d at 223.

Merrill's second argument centers around the Minnesota Supreme Court's *Carlson* decision. *See* 749 N.W.2d 41. Although the facts of that case are inapposite – *Carlson* involved an injured pedestrian's failed attempt to receive UIM benefits from his father's auto insurance policy[10] – Merrill appears to cite the case for its policy dicta. In particular, that the "goal" of the relevant provision of the No-Fault Act was "to give owners the ability to select and purchase the amount of coverage they desire in excess of the mandatory minimum and then to access that coverage if they are injured in a vehicle owned by someone with minimum coverage." *Id*. at 47 (citing *Becker*, 611 N.W.2d at 13)). Here, Merrill argues, Ms. Bailey purchased more extensive UIM coverage "to protect herself and her son P.B." from Ms. Chiodo's "minimum coverage." (Merrill's Br. at 9.) Surely, Merrill contends, it would

---

[10]    Specifically, the pedestrian cited a phrase from Section 65B.49, subd. 3a(5) not at issue here – that "[i]f at the time of the accident the injured person is *not* occupying a motor vehicle or motorcycle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person *is insured*" – and suggested that this implied definition of "insured" precluded the policy's "narrow definition of insured." *Id*. at 46. The Minnesota Supreme Court rejected this argument: "[T]he meaning of 'insured' for purposes of an injured *pedestrian* depends upon the policy rather than the statute." *Id*. (emphasis added).

contravene legislative intent for P.B. to not have access to his mother's coverage "in excess of the mandatory minimum," "just because he happened to reside with [his] grandmother and was riding in [her] vehicle at the time of the crash." (*Id.* at 9.) This is especially so because, at the age of two, P.B. "could not have been named in any policy." (*Id.* at 2.) If Ms. Bailey is not "insured" under the Chiodo Policy because she is "named" under the Bailey Policy, Merrill's argument implies, why doesn't her young son fall under that exception, too?

Although this argument is quite sensible at first blush, it, unfortunately, clashes with the No-Fault Act's plain text and the relevant precedent. *Cf. Jirik*, 595 N.W.2d at 222-23 (denying a "logical" claim for excess UIM coverage because doing so would "invite" courts "to ignore . . . the language of" the statute). In addition to the statutory text detailed above, the Minnesota Supreme Court has been clear that, under the No-Fault Act, a party is only a "named insured" if they are specifically named in a policy. This holds true even if a person was "the obvious object" of the insurance policy, like P.B. here. *Cf. Becker*, 611 N.W.2d at 12-13 (finding that, even though an injured employee was "the obvious object of her employer's policy on the truck she was driving," the employee was not statutorily "insured" under that policy because she was not "the named insured"); *see also West Bend*, 776 N.W.2d at 703 (denying excess UIM claim under same reasoning).

Under the unique circumstances of this case, Merrill's only source for UIM coverage was the Chiodo Policy. That the policy's proceeds have already been distributed is, regrettably, of no moment. State Farm's Motion for Judgment on the Pleadings is accordingly granted.

## B. Merrill's Counterclaims

In its Answer, Merrill also asserted counterclaims for breach of contract and unjust enrichment. (*See* Answer & Countercl. ¶¶ 24-25.) Because Merrill fails to state a plausible claim under either cause of action, the Court will also grant State Farm's motion to dismiss both counterclaims.

### 1. Breach of Contract

To prevail on a claim for breach of contract, a party must prove the following elements: (1) formation of a contract; (2) performance by plaintiff of conditions precedent; and (3) breach of the contract by defendant. *See Lyon Fin. Serv., Inc. v. Ill. Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Even accepting Merrill's allegations as true, and drawing all reasonable inferences in his favor, Merrill fails to state a plausible breach claim.

Most importantly, Merrill fails to allege facts showing that he and State Farm ever entered into a contract for $100,000 in UIM benefits. Merrill simply alleges that State Farm "considered the terms of the [Claim] Settlement," attached to the aforementioned August 8, 2017 letter, "as binding." (Answer & Countercl. ¶ 57.) State Farm, however, was plainly not a party to the Claim Settlement. The Claim Settlement is only signed by the Claimants' attorneys, and the letter accompanying the signed settlement is merely a *Schmidt* notice. (*See* Answer & Countercl., Ex. C at 35-36.)[11] As the text of both the Claim Settlement and the

---

[11] As noted above, a *Schmidt* notice provides notice of a tentative settlement to an underinsurer, which then enables the underinsurer to protect its subrogation rights against a tortfeasor. *See Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983). The Minnesota Supreme Court has explained that an "underinsurer has a 'subrogation right against the tortfeasor only if it has paid underinsurance benefits prior to release of the tortfeasor, . . . [so] the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect those potential rights by paying underinsurance benefits before release.'" *George v. Evenson*, 754 N.W.2d 335, 341 (Minn. 2008).

*Schmidt* notice indicate, this August 8 letter amounted to neither a contract, nor even an offer to contract, on the issue of excess UIM benefits. (*See id.* at 32 (Claim Settlement) ("To the extent any . . . insurer reviews this agreement, the undersigned [Claimant attorneys] *urge it to consider it* a fair and reasonable resolution of the parties' respective claims."); *id.* at 35 (*Schmidt* Notice) (stating that the Estate of P.B. "will seek" excess UIM benefits through the Bailey Policy); *see also Great Lakes*, 871 F. Supp. 2d at 851 (noting that courts may consider "exhibits attached to the complaint" when evaluating a motion to dismiss).)

Moreover, even if this letter did somehow constitute an offer on the issue of excess UIM benefits under the Bailey Policy, Merrill never alleges facts suggesting that State Farm accepted that offer. Rather, the facts alleged demonstrate that State Farm repeatedly declined to make any promises about excess UIM benefits under the Bailey Policy, even as it agreed to the Claimants' allocation with respect to the *Hayes* Policy. (*See, e.g.*, Answer & Countercl. ¶¶ 64-67 (only alleging that, on August 8, "State Farm employees informed Merrill's attorney they were *unable to discuss* the [UIM] until the liability claims against Mr. Hayes were settled") (emphasis added); *supra* at n.5.) Thus, absent a plausible allegation of a contract, Merrill's breach claim must be dismissed. *See, e.g., Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980) ("A contract requires a meeting of the minds concerning its essential elements.").

Merrill also attempts to characterize State Farm's response to the Claim Settlement as creating a contract implied-in-fact. (*See* Merrill's Br. at 12.) A contract may be implied in fact where the "circumstances . . . clearly and unequivocally indicate the intention of the parties to enter into a contract." *Webb Bus. Promotions, Inc. v. Am. Elec. & Entm't Corp.*,

617 N.W.2d 67, 75 (Minn. 2000). However, "reliance on an implied contract 'does not relieve a plaintiff from his burden of establishing all essential contractual ingredients.'" *McIntosh Cty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 549 (Minn. 2008) (quoting *High v. Supreme Lodge of World, Loyal Order of Moose*, 210 Minn. 471, 473 (1941)). "Like express contracts, contracts implied in fact require a meeting of the minds." *J&M Distrib., Inc. v. Hearth & Home Tech., Inc.*, No. 13-cv-72 (SRN/TRL), 2014 WL 12597431, at *15 (D. Minn. July 8, 2014) (finding that an implied contract potentially existed where "parties continued to operate as [if] they had [a contract] over the course of many years").

Again, even viewing the Counterclaim in the manner most favorable to Merrill, he does not allege that State Farm's conduct evinced a "clear and unequivocal" intent to provide Merrill excess UIM benefits from the Bailey Policy. *Webb Bus. Promotions*, 617 N.W.2d at 75. Although State Farm appeared to be aware of Merrill's request for UIM benefits, Merrill fails to allege plausible facts showing that a "meeting of the minds" occurred as to whether State Farm would, in fact, provide those benefits.

### 2. Unjust Enrichment

"In Minnesota, to state a claim for unjust enrichment, 'the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay.'" *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1099 (D. Minn. 2017) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). The Minnesota Supreme Court has further clarified that, to prevail on this claim, a party "must establish an implied-in-law or quasi-contract in which the

[counterparty] received a benefit of value that unjustly enriched the [counterparty] in a manner that is *illegal or unlawful*." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (emphasis added) (citing *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)).

Here, Merrill claims that State Farm "led [him] to believe there was [UIM] coverage available, thereby, inducing [him] to accept the pro rata bodily injury settlement from State Farm on behalf of their negligent driver, [Mr.] Hayes." (Merrill's Br. at 10.) This is so, Merrill argues, because State Farm allegedly "failed to raise any issue regarding lack of [UIM] coverage for more than three months after State Farm received notice of the potential settlement." (*Id.* at 11.) As such, Merrill concludes, State Farm has been unjustly enriched by its retention of the $100,000 in UIM coverage that, in his view, should have gone to P.B.'s Estate. (*Id.*)

The Court agrees that, after it received notice of the Claim Settlement on August 8, State Farm should have more quickly reached a decision about Merrill's excess UIM claim, and then advised Merrill's counsel of that decision. This would have better informed the Claimants' internal settlement discussions. However, failure to exhibit best business practices does not amount to unjust enrichment. Simply put, Merrill cannot state a claim for unjust enrichment because he does not allege that State Farm retained the $100,000 in UIM benefits "in a manner that is illegal or unlawful." *Caldas*, 820 N.W.2d at 838. Minnesota law allowed State Farm to deny Merrill's excess UIM claim. And Merrill has not alleged that State Farm entered into an "implied-in-law or quasi-contract" with him that promised it would do otherwise. *Id.*

For these reasons, State Farm's motion to dismiss is granted in full.

## III.     CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED** that State Farm's Motion for Judgment on the Pleadings and to Dismiss Merrill's

Counterclaims [Doc. No. 43] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 20, 2018                              <u>    **/s/ Susan Richard Nelson**   </u>
                                                                        SUSAN RICHARD NELSON
                                                                        United States District Judge